**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Dennis MEES, Defendant and Appellant.**

**Cr. No. 643.**

Supreme Court of North Dakota.

Nov. 28, 1978.

Riskedahl & Johnson, Bismarck, for defendant and appellant; argued by Burt L. Riskedahl, Bismarck.

Kent A. Higgins, Grant County State's Atty., Bismarck, for plaintiff and appellee.

SAND, Justice.

This is an appeal by the defendant, Mees, from a denial of a motion for post-conviction relief under Chapter 29–32 of the North Dakota Century Code. The issue presented is whether or not a North Dakota sentence of imprisonment may be imposed upon a defendant to commence on the date of his release from federal custody when at the time of state sentencing the defendant was awaiting sentencing by a federal court.

Dennis Mees, the defendant, pleaded guilty on 14 January 1976 to charges of armed robbery, kidnapping, and aggravated

assault and battery in Grant County district court. He had previously pleaded guilty to two counts of mail fraud in federal district court at Bismarck, North Dakota, and at the time of his appearance in state district court was still awaiting sentencing on the federal convictions. Upon request, the federal court granted temporary custody of Mees to the state for the appropriate proceedings in connection with the state charges against him. Mees entered his guilty plea in the state court and on the same day was sentenced to concurrent terms of imprisonment of five years for the aggravated assault and battery conviction, ten years for the armed robbery conviction, and seventeen years for the kidnapping conviction. The sentencing order stated:

"The term of imprisonment is to commence at twelve o'clock noon of the day you are released by the Federal authorities to the State of North Dakota, and that you stand committed until this judgment of imprisonment is complied with; and it is further,

"ORDERED That the clerk deliver a certified copy of this Judgment and Commitment to the Sheriff of Grant County, who upon receipt thereof, shall forthwith deliver the Defendant to the United States Marshal for the State of North Dakota and deliver a certified copy of this Criminal Judgment and Commitment to the United States Marshal and the United States Attorney for the State of North Dakota and the Warden of the North Dakota State Penitentiary, and it is further,

"ORDERED, that when the defendant Dennis Mees, is released by the Federal Authorities they are to notify the Warden of the North Dakota State Penitentiary and the Sheriff of Grant County so that the defendant may be delivered to the Warden of the North Dakota State Penitentiary in execution of this judgment of imprisonment, and the officer who so delivers the defendant to the Warden of the State Penitentiary is to take from the Warden a receipt for the delivery of the Defendant, and make return thereof to the Court."

Following sentencing in state court, Mees was returned to the custody of the federal authorities. Approximately two weeks later he was sentenced by the federal court to a term of imprisonment of two years to be served in the North Dakota state penitentiary. Mees began serving his sentence for the federal convictions on 26 January 1976. On 20 June 1977 he was paroled by federal authorities but remained incarcerated at the North Dakota state penitentiary to serve his state sentence.

The state prison and parole authorities, in accordance with the state court sentencing order, considered Mees' state sentence to have commenced on 20 June 1977, the date of his release from federal custody. Thus, while Mees has been a prisoner at the North Dakota penitentiary continuously since 26 January 1976, credit was not started on his seventeen-year state court sentence until 20 June 1977.

Mees then filed his motion for post-conviction relief in Grant County district court alleging the state sentence violated § 12.1–32–02(6), North Dakota Century Code, which states that a term of imprisonment commences at the time of sentencing. Mees' application for post-conviction relief was denied, whereupon he appealed to this court. We affirm.

Mees, on appeal, challenges the power of the district court to impose a sentence of imprisonment to commence following his release from federal custody when at the time of state sentencing he had pleaded guilty to a federal offense but sentencing was still pending.

Mees argued that the trial court was prohibited from imposing a sentence of imprisonment to commence at some date in the future pursuant to § 12.1–32–02(6), NDCC, which provides as follows:

"If an offender is sentenced to a term of imprisonment, that term of imprisonment commences at the time of sentencing, unless, upon motion of the defendant, the court orders the term to commence at some other time."

The foregoing language assumes that the defendant is ready and able to begin serving his sentence without qualification and is not otherwise prevented from physically serving the sentence in the state. Read literally, separately, and independently of related statutory provisions, § 12.1–32–02(6), NDCC, could be construed to prohibit the commencement of an imprisonment sentence at any time other than the date of imposition.

If so construed it would also restrict the court from giving credit to time served prior to the sentence. Also, if so construed and if defendant's contentions were accepted, any sentence imposing incarceration would start to run from the date of sentencing and if an appeal were taken and the defendant were released pending appeal, the sentence would run its course by mere passage of time. These are only some examples of what could happen under the construction advanced by the defendant.

■ This court has consistently held that statutes must be construed to avoid ludicrous and absurd results. *State v. Jelliff,* 251 N.W.2d 1 (N.D.1977); *Pollock v. McKenzie County Public School District No. 1,* 221 N.W.2d 521 (N.D.1974); and *Hughes v. State Farm Mutual Automobile Mutual Insurance Co.,* 236 N.W.2d 870 (N.D.1975).

■ On numerous occasions this Court has stated that statutes must be construed as a whole to determine the intent of the legislature and that the intent must be derived from the whole statute by taking and comparing every part thereof together. *City of Fargo v. State,* 260 N.W.2d 333 (N.D.1977). Where a general provision conflicts with a special provision in the same statute or other statute the two should be construed, if possible, so that effect is given to both, *Lohnes v. Cloud,* 254 N.W.2d 430 (N.D.1977), and if this is impossible the special shall prevail (§ 1–02–07, NDCC). When statutes relate to the same subject matter in general, or are in *pari materia,* every effort should be made to give meaningful effect to each without rendering one or the other useless. *Edgeley Education Association v. Edgeley Public School District No. 3,* 231 N.W.2d 826 (N.D.1975).

As stated earlier herein, by considering § 12.1–32–02(6), NDCC, separately and independently from the rest of the Act, it is ambiguous in that it can produce several meanings and absurd results. *Grove v. Charbonneau Buick-Pontiac, Inc.,* 240 N.W.2d 853 (N.D.1976), and *In Re Estate of Johnson,* 214 N.W.2d 112 (N.D.1973).

Section 1–02–39, NDCC, which is appropriately applicable to this subsection, provides that:

"If a statute is ambiguous, the court, in determining the intention of the legislation, may consider among other matters:

1. The object sought to be attained.
2. The circumstances under which the statute was enacted.
3. The legislative history.
4. The common law or former statutory provisions, including laws upon the same or similar subjects.
5. The consequences of a particular construction.
6. The administrative construction of the statute.
7. The preamble."

See also, *Hughes v. North Dakota Crime Victims Reparations Board,* 246 N.W.2d 774 (N.D.1976); *Kottsick v. Carlson,* 241 N.W.2d 842 (N.D.1976); *Saetz v. Heiser,* 240 N.W.2d 67 (N.D.1976); and *State ex rel. Sanstead v. Freed,* 251 N.W.2d 898 (N.D.1977).

In § 1–02–38, NDCC, the legislature states that in enacting a statute it is presumed that: (1) compliance with the constitutions of the state and of the United States is intended; (2) the entire statute is intended to be effective; (3) a just and reasonable result is intended; (4) a result feasible of execution is intended; and (5) public interest is favored over any private interest.

In determining legislative intent, the court may consider, among other matters, the object sought to be attained, the common law or former statutory provisions, the statute's connection to other related statutes and the consequences of a particular construction, NDCC § 1–02–39.

We have been unable to locate, nor has anyone been able to direct us to, any specific legislative history concerning § 12.1–32–02(6), NDCC. Consequently, we construe this statute in accordance with the considerations previously set forth.

Section 12.1–32–02(6), NDCC, and § 12.1–32–11 were enacted by § 31, ch. 116 of the 1973 Session Laws (Senate Bill 2045, a product of an L.R.C. Study entitled Criminal Law Revision). Section 12.1–32–11 provides as follows:

"1. Unless the court otherwise orders, when a person serving a term of commitment imposed by a court of this state is committed for another offense or offenses, the shorter term or the shorter remaining term shall be merged in the other term. When a person on probation or parole for an offense committed in this state is sentenced for another offense or offenses, the period still to be served on probation or parole shall be merged in the new sentence of commitment or probation. A court merging sentences under this subsection shall forthwith furnish each of the other courts previously involved and the penal facility in which the defendant is confined under sentence with authenticated copies of its sentence, which shall cite the sentences being merged. A court which imposed a sentence which is merged pursuant to this subsection shall modify such sentence in accordance with the effect of the merger.

"2. If sentences for multiple offenses are imposed to run consecutively, the aggregate total term of imprisonment resulting from such consecutive sentences shall not exceed the maximum term allowable under section 12.1–32–08 for the highest classification of offense for which the defendant is being sentenced.

"3. When sentenced only for misdemeanors, a defendant may not be consecutively sentenced to more than one year, except that a defendant being sentenced for two or more class A misdemeanors may be subject to an aggregate maximum not exceeding that authorized by section 12.1–32–01 for a class C felony if each class A misdemeanor was committed

as part of a different course of conduct or each involved a substantially different criminal objective."

 Subsection (2) of the above section was repealed by ch. 129 of the 1977 S.L. (Senate Bill 2531) but this does not alter the basic premise that the two sections (§§ 12.-1–32–06 and 12.1–32–11) and their subsections were all enacted by the same legislature through the same bill as one act, and pursuant to the rules of construction must be construed together as a whole, and particularly as they interrelate to each other to determine the true intent and objective of the legislature. Any amendment or repeal of any part of a statute must also be considered in determining the true subsequent intent and objective of the legislature.

The sponsor of the bill which repealed subsection (2) of § 12.1–32–11 stated it was introduced at the request of the State's Attorneys Association. The bill, according to Committee minutes, was explained that by repealing subsection (2) the legislature "will be allowing the defendant to serve a separate sentence for each count committed."

In *State v. Rudolph,* 260 N.W.2d 13 (N.D. 1977), we considered the provisions of Ch. 12.1–32, NDCC, and concluded that the reference to § 12.1–32–08 in subsection (2) of § 12.1–32–11 was in error and that the intended reference was, and should have been to § 12.1–32–09, and that the mistake occurred as a result of the altered numbering in the final bill as distinguished from the bill as introduced in the 1973 legislature. We also recognize that the provisions of Ch. 12.1–32, NDCC, were interrelated. The *Rudolph* case also establishes that the statutory provisions of Ch. 12.1–32 permits consecutive sentencing.

In *State v. Flemmer,* 211 N.W.2d 189 (N.D.1973), this court, in construing § 12–06–09, NDCC, the forerunner to the present act, concluded that because we had no law which prohibited a district court from imposing a consecutive sentence it was within the district court's discretion to determine whether the sentence should run concur-

rently or consecutively. Section 12–06–09, NDCC, provided as follows:

"The term of imprisonment fixed by the judgment in a criminal action commences to run only from the time of the sentence of the defendant. If during such term the defendant escapes or by any legal means is released temporarily from such imprisonment and subsequently returned thereto, the time during which he was at large must not be computed as part of such term."

The court further observed that its conclusion was in accord with recommendations contained in the Standards Relating to Sentencing Alternatives and Procedures as put out by the American Bar Association Project on minimum Standards for Criminal Justice.

The Court then quoted § 12.1–32–11 and observed that its provisions would not become effective until July 1, 1975, and that they were set forth in the opinion merely to help alert the people of the state to the new features of the law so that they would be aware of its provisions while there was still time to revise the law in the intervening session, should such revision be necessary. No action was taken by the legislature so we must assume that the legislature was satisfied with the provisions and that no change was needed.

█ It appears that § 12.1–32–11(1) merely sets forth the common law rule that in the absence of a court order directing otherwise a sentence for crimes committed in the same state are to be served concurrently. *Ex parte Sabongy,* 18 N.J.Super. 334, 87 A.2d 59 (1952). The prefacing language "unless the court otherwise orders," however, clearly and expressly empowers the court to order sentences to run consecutively. In construing a statute, every word and phrase must be given recognition.

If § 12.1–32–02(6), NDCC, were construed as advanced by the defendant, a sentencing court would be without authority to impose a sentence consecutively to an existing sentence and the phrase "unless the court otherwise orders" would be disregarded and made meaningless. We, however, conclude

that the "unless expressly ordered otherwise" phrase in a statute which provides that on conviction of two or more offenses the sentences shall run concurrently *unless expressly ordered otherwise* creates an exception to a statute on a related matter which provides that the sentence for the commission of a crime shall commence on the date of sentencing.

█ By applying the reasoning of *State v. Flemmer, supra,* to the instant matter we reach the conclusion that because § 12.1–32–02(6) does not prohibit the district court from imposing a consecutive sentence the trial court has the power to impose consecutive sentences. The Virginia Supreme Court came to much the same conclusion in interpreting its statute that provides a term of imprisonment commences on the date of filing judgment. *Connor v. Commonwealth,* 207 Va. 455, 150 S.E.2d 478 (1966). See also *Peyton v. Williams,* 206 Va. 595, 145 S.E.2d 147 (1965); *Wilkinson v. Youell,* 180 Va. 321, 23 S.E.2d 356 (1942).

If the defendant's contention were accepted, the trial court in this instance could not have imposed a consecutive sentence because of the defendant's situation and status with the federal court. By applying the rationale of the *Flemmer* case, *supra,* we conclude that such a construction was not intended and would require a strained interpretation to produce such result.

Mees also argues that it is impossible for a trial court to impose a sentence consecutive to a sentence or an event not yet in existence because it would be neither clear nor definite.

█ We recognize and accept the legal concept that a sentence must be certain, definite, and not be dependent upon an uncertain contingency or condition. Mees cited a number of cases in support of his argument that a sentence to commence upon the happening of some event in the future, when that time has not yet been determined, is neither clear nor definite. We find, however, that the factual situation of the cases cited and the statutes upon

which they were decided are significantly different from this case.

There are, however, some federal court cases in which the sentences pronounced were similar to the one in this case and the principles relied upon there are applicable here. In *Williamson v. United States*, 374 F.2d 90 (5th Cir. 1967), *cert. denied* 362 U.S. 920, 80 S.Ct. 672, 4 L.Ed.2d 740 (1960), the defendant was sentenced to two concurrent five-year terms of imprisonment to commence upon expiration of a sentence in a prior conviction in which an appeal was pending. *Williamson*, by writ of habeas corpus, challenged the time of commencement claiming that the time of commencement was uncertain as it was to run consecutive to a sentence for a conviction not yet finalized. The court, however, held that by applying a reasonable interpretation to the sentence no uncertainty could be said to exist. The court stated it was clear the trial court meant when the defendant had served or was released from the sentence under the first conviction that he would start serving a second sentence. The Court quoted the following from *Blitz v. United States*, 153 U.S. 308, 318, 14 S.Ct. 924, 928, 38 L.Ed. 725 (1894):

> "Though uncertain at the time, depending upon a possible contingency that the imprisonment on the former sentence will be remitted or shortened, it will be made certain by the court. If the previous sentence is shortened by a reversal of the judgment or a pardon, it then expires, and then, by its terms, the sentence in question takes effect as if the previous one had expired by lapse of time."

In *Anderson v. United States*, 405 F.2d 492 (10th Cir. 1969), *cert. denied* 394 U.S. 965, 89 S.Ct. 1318, 22 L.Ed.2d 567, defendant pleaded guilty to federal charges and was sentenced to three concurrent five-year terms of imprisonment. The sentencing order further stated "that the sentences of confinement imposed herein shall run consecutive to any confinement under which defendant is being held by state authorities." Following federal sentencing, Anderson was returned to state authorities where he was convicted and sentenced. He served the state sentence and then filed a motion pursuant to Rule 35, Federal Rules of Criminal Procedure. On appeal, Anderson contended his federal sentence should have been deemed to have started on the day of federal sentencing on the basis that "no court has the authority to impose a sentence consecutive to something that does not exist." The Tenth Circuit Court held there was no uncertainty in Anderson's sentence in that the trial court clearly meant the sentence to be consecutive to any state confinement under which Anderson might become obligated. The court held that even had Anderson been acquitted on the state charge, the state confinement would have ended and he would then have begun serving the federal sentence. See also, *Zahn v. Kipp*, 218 F.2d 898 (7th Cir. 1955), and *Zerbst v. McPike*, 97 F.2d 253 (5th Cir. 1938).

 Mees argued the district court did not state that the defendant's sentence was to be served consecutively to the federal sentence, but rather that the state sentence was to commence upon Mees' release by the federal authorities. Mees takes the position that because the trial court did not specifically state that its sentence was to be served consecutively to any federal sentence that might be imposed, the sentence must be considered as a sentence to commence in the future and thus the above-discussed cases would not be applicable. We find Mees' argument to be a distinction without a difference. The determination of whether or not Mees' sentence was improper is not affected by the specific wording used by the trial court, but rather the effect of that wording. The issue surrounding Mees' sentence is that the sentence was to commence upon the happening of an event sure to come about even though the date was unknown when the sentence was imposed. The definiteness of the sentence remains the same regardless if the event is deemed the expiration of a federal sentence or the release from federal authorities.

We find Mees' state court sentence was both clear and definite. Mees' state sen-

tence was to commence upon his release from the federal authorities. The fact that the exact date of that release was both unknown and undetermined at the time the state sentence was imposed does not make the sentence less definite. What was definite was the fact that he was then in custody and would be released ant that he would begin serving his state sentence on the date of that release. We find little difference between this case and had Mees' sentence been to commence following an existing federal sentence. Although an existing federal sentence would be imposed for a set period of time, the exact length of the incarceration, and thus the commencement date of the consecutive sentence, will, in the usual instance, be subject to the discretion and control of prison and parole authorities. Here, as in *Blitz v. United States, supra,* the uncertainty of the sentence when it was imposed became certain on the happening of an event which was sure to come.

██ We agree with the statement made by Mees' counsel at oral argument that the second sentencing court should have the prerogative to decide if its sentence will be served consecutively. It is not without significance that the federal district judge who pronounced Mees' federal sentence must have known of his state sentence. Certainly if the federal court had no knowledge of the state sentence, Mees has no one to blame but himself for not bringing the fact

to its attention. As the second sentencing court, the federal court could have released Mees to the state authorities and ordered his federal sentence served concurrent to the state sentence. By not releasing Mees to the State and ordering the sentences served concurrently, the federal court, as the second sentencing court, in effect determined and ordered the two sentences to be served consecutively. By following Mees' suggestion that his state sentence be deemed to have begun on the day of his sentencing we would not be correcting a possible erroneous assumption on the part of the state district court as to the extent of its power to impose concurrent sentences, but would in essence be overturning the federal court determination that the sentences be served consecutively, as well as placing an unwarranted construction on the appropriate statutes in operation. This we decline to do.

The denial of appellant's motion for post-conviction relief is affirmed.

ERICKSTAD, C. J., and VandeWALLE, PEDERSON and PAULSON, JJ., concur.